## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| POWER DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 10-10684 |
| Debtor. | ) | |
| . | ) | |

## MOTION FOR RELIEF FROM STAY

Southern Community Bank and Trust ("SCBT"), by and through its undersigned counsel, hereby moves the Court, pursuant to 11 U.S.C. § 362(d) and Federal Rules of Bankruptcy Procedure 4001 and 9014, for relief from the automatic stay to authorize SCBT to provide, or direct that Debtor be provided, required notices in an anticipated foreclosure proceeding related to certain real property owned by Dakar, Inc., a non-debtor entity (the "Motion").

In support of this Motion, SCBT respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §1408. The statutory predicate for the relief requested herein is Section 362(d) of the Bankruptcy Code.

2.      On June 11, 2010 (the "Petition Date"), Power Development, LLC ("Debtor") filed with this Court a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its businesses and manage its property as debtor-in-possession.

3.      On or about October 11, 2007, Debtor executed a Promissory Note to SCBT in the original principal amount of $600,000, which was later modified by that certain Commercial Debt Modification Agreement dated November 17, 2008, that Commercial Debt Modification Agreement dated September 25, 2009, and that certain Commercial Promissory Note dated December 24, 2009 (collectively, the "Note"). A true, accurate and complete copy of the Note, including all modifications, is attached hereto as **Exhibit A** and incorporated herein by reference as if fully set forth.

4.      On or about October 11, 2007, Dakar, Inc., a non-debtor entity, granted a deed of trust to SCBT, Inc., as trustee for the benefit of SCBT, recorded at Book 4474, Page 1776, of the Buncombe County Public Registry, North Carolina, to secure the Note. A true, accurate and complete copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by reference as if fully set forth (the "Deed of Trust").

5.      Although the real property subject to the Deed of Trust, 188 Coxe Avenue, Asheville, North Carolina, and 42&44 Collier Avenue, Asheville North Carolina (the "Dakar Property"), is listed in Debtor's Schedules as real property owned by the Debtor, the Dakar Property is in fact owned by Dakar, Inc. and is not property of the Debtor or the bankruptcy estate.

6.      The Note matured on April 22, 2010, and Debtor defaulted under the terms of the Note by, *inter alia*, failing to pay all outstanding amounts due under the Note at its maturity.

7.      As of the Petition Date, the outstanding amount due under the Note, exclusive of costs and attorneys fees, was $621,769.32.

8.      SCBT desires to commence a special proceeding to foreclose and sell the Dakar Property pursuant to the power of sale contained in the Deed of Trust in accordance with North Carolina law.

9.      Even though Debtor has no ownership interest in the Dakar Property, since Debtor is the Borrower under the Note, Debtor must be provided with certain notices as required by North Carolina for SCBT to proceed to foreclose on the Dakar Property and preserve its rights to pursue Debtor for any deficiency following a foreclosure sale of the Dakar Property.

10.     Pursuant to N.C. Gen. Stat. § 45-21.16(c)(5a), prior to commencing a foreclosure proceeding against the Dakar Property, SCBT is required to send a written notification to Debtor setting forth the amount of principal, interest and other fees, expenses and disbursements owed as of such date and the daily interest charge based on the contract rate.

11.     Pursuant to N.C. Gen. Stat. § 45-21.16(b), in order to foreclose upon the Dakar Property and to preserve the right to pursue Debtor for a deficiency following a foreclosure sale of the Dakar Property, Debtor must be served with notice of the foreclosure hearing on the Dakar Property.

12.     Pursuant to N.C. Gen. Stat. § 45-21.17(4), Debtor must be provided with notice of the sale of the Dakar Property via first class mail following the anticipated foreclosure hearing.


**Relief Requested**

13.     By this Motion, SCBT requests that the Court enter an order modifying the automatic stay to allow SCBT, the trustee or any substitute trustee in the Deed of Trust to mail Debtor the written notice required by N.C. Gen. Stat. § 45-21.16(c)(5a), serve Debtor with notice of the hearing on foreclosure of the Dakar Property as required by N.C. Gen. Stat. § 45-21.16(b),

mail the notice of sale to Debtor as required by N.C. Gen. Stat. § 45-21.17(4), and mail all other required documents in the anticipated foreclosure proceeding in order to allow SCBT to foreclose on the Dakar Property and to preserve all rights of SCBT to assert a deficiency claim against Debtor in this Chapter 11 case following the sale of the Dakar Property.

### Basis for Relief

14.     Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay may be lifted for "cause." SCBT asserts that cause exists for relief from the automatic stay. Debtor is obligated to SCBT under the Note, but absent a modification of the automatic stay, SCBT's ability to foreclose on the Dakar Property and assert a claim in the above captioned Chapter 11 case against Debtor will be negatively impacted. Debtor must be served with the Notice of Hearing in the anticipated foreclosure proceeding and provided the required statutory notices under North Carolina law in order for SCBT to foreclose on the Dakar Property and preserve its rights to assert a deficiency claim against Debtor in this Chapter 11 case following the sale of the Dakar Property.

15.     The Dakar Property is not property of the Debtor or the bankruptcy estate and SCBT is not seeking through this Motion to collect amounts from Debtor outside of this Chapter 11 case, merely to comply with the notice and service provisions necessary under North Carolina law to foreclose on the Dakar Property and preserve SCBT's rights to assert a deficiency claim against Debtor in this Chapter 11 case.

WHEREFORE, SCBT respectfully requests that the Court enter an order modifying and lifting the automatic stay provided by Section 362(a) of the Bankruptcy Code and waiving the 10 day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) to allow SCBT, the trustee or any substitute trustee under the Deed of Trust, to mail Debtor the written notice

required by N.C. Gen. Stat. § 45-21.16(c)(5a), to serve Debtor with the required statutory notice of hearing on foreclosure as required by N.C. Gen. Stat. § 45-21.16(b), mail notice of the foreclosure sale of the Dakar Property to Debtor as required by N.C. Gen. Stat. § 45-21.17(4), and to mail any other required documents in the anticipated foreclosure proceeding of the Dakar Property to Debtor, and for such other and further relief as the Court deems just and proper.

This 28th day of July, 2010.

s/Jeanette M. Stark
Jeanette M. Stark, NCSB # 31812
*Attorney for Southern Community Bank and Trust*

**OF COUNSEL:**

BLANCO TACKABERY & MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
Email: jstark@blancolaw.com

| | SOUTHERN COMMUNITY BANK AND TRUST | Loan Number 2710006026 |
| | PO BOX 26134 | Date 10/11/2007 |
| | WINSTON SALEM, NC 27114 | Maturity Date 10/10/2008 |
| Power Development, LLC | | Loan Amount $ 600,000.00 |
| One Oak Plaza, Suite 105 | | Renewal Of |
| Asheville, NC 28805 | | |
| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS | |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __SIX HUNDRED   THOUSAND__
AND 00/100 _____ Dollars $ 600,000.00 _____

[X] **Single Advance:** I will receive all of this principal sum on 10/11/2007 . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ .

[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 10/11/2007 at the rate of 7.750 % per year until 10/12/2007 .

[X] **Variable Rate:** This rate may then change as stated below.

   [X] **Index Rate:** The future rate will be 0.000% above the following index rate: Southern Community Bank and Trust Prime Rate - designated by the Bank from time to time as its "Prime Rate", which is not necessarily the lowest rate charged by the Bank to its borrowers

   [ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

   [X] **Frequency and Timing:** The rate on this note may change as often as daily .
   A change in the interest rate will take effect immediately .

   [X] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than 16.000 % or less than 0.000 %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
   [X] The amount of each scheduled payment will change.   [ ] The amount of the final payment will change.
   [ ] _____

**ACCRUAL METHOD:** Interest will be calculated on a 365/360 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid principal balance of this note owing after maturity, and until paid in full, as stated below:
   [X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
   [ ] at a rate equal to _____

[X] **LATE CHARGE:** If a payment is made more than 15 days after it is due, I agree to pay a late charge of 4.000%

[X] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [ ] are [X] are not included in the principal amount above: Origination Fee $3000.00

**PAYMENTS:** I agree to pay this note as follows:
[X] **Interest:** I agree to pay accrued interest monthly beginning 11/10/2007

[X] **Principal:** I agree to pay the principal on or before 10/10/2008

[ ] **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $ _____ and will be due _____ . A payment of $ _____ will be due _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____

**ADDITIONAL TERMS:**

**DEFAULT RATE:** In lieu of any post-maturity interest rate set forth in the Note and in addition to and without limiting the remedies in the Note, if the Borrower is in default on this Note or any agreement securing this Note, the Lender may, after giving notice of default to the Borrower, change the interest rate on the Note to three (3) percent above the contract rate per year (the "Default Rate"). Post-judgment interest shall accrue at the Default Rate.

[X] **SECURITY:** This note is separately secured by (describe separate document by type and date): Deed of Trust of even date

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is Refinance debt

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2) AND EXECUTE THIS NOTE UNDER SEAL. I** have received a copy on today's date.

Power Development, LLC

By: Shire Properties _____ , Member/Manager

By: _____ (Seal)
   David R. Payne, Member/Manager

_____ (Seal)
Gerald D Payne, Member/Manager

Signature for Lender

_____
Dan Anderson

_____ (Seal)
David R Payne

_____ (Seal)

_____
Gerald D Payne

_____ (Seal)

**UNIVERSAL NOTE**
© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-NC 1/24/96

(page 1 of 2)

-C154(NC) (0012).05
VMP MORTGAGE FORMS - (800)521-7291

## EXHIBIT A

**DEFINITIONS:** As used on page 1, " ☒ " means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of North Carolina will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or replace any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not

---

contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season, if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges). If this is a high cost home loan, as defined under North Carolina law, your ability to accelerate all that I owe under this note is limited by NC Code § 24-1.1E(b)(1).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay reasonable attorneys' fees plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION:** I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

---

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |
| /    / | $ |  | $ | $ | % | $ | /    / |

© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-NC 4/3/2000
 -C154( NC) (0012).05



(page 2 of 3)

| BORROWER NAME AND ADDRESS | LENDER NAME AND ADDRESS | LOAN DESCRIPTION |
|---|---|---|
| Powex Development, LLC<br>One Oak Plaza, Suite 105<br>Asheville, NC 28805 | SOUTHERN COMMUNITY BANK AND<br>TRUST<br>PO BOX 26134<br>WINSTON-SALEM, NC 27114 | Number **2710005026**<br><br>Amount $ **599,553.75**<br><br>Date **11/17/2008** |

☐ Refer to the attached Signature Addendum, incorporated herein, for additional Borrowers and their signatures.

## COMMERCIAL DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is **11/17/2008**

**DEFINITIONS.** As used in this Modification, the terms have the following meanings:

Pronouns. The pronouns "I", "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in this Modification or Prior Obligation.

Prior Obligation. "Prior Obligation" refers to my previous agreement governing my promise to pay you money, including any loan agreement, note, or document that evidences my indebtedness, and any extensions, renewals, and substitutions.

**BACKGROUND.** You and I have entered into a Prior Obligation which is evidenced by **Promissory Note and Deed of Trust**

dated **10/11/2007**    ☒ in the original principal amount of /  ☐ with a maximum possible principal amount of $ **600,000.00**

☐ payable on demand. /  ☐ payable on demand but if no demand is made, by the maturity date of _____ . /  ☒ with a maturity date of **10/10/2009**

As of the date of this Modification, the ☒ amount remaining due is / ☐ current amount outstanding on the Prior Obligation is $ **599,553.75**

principal (Principal) plus $ **5,221.09**    accrued interest, for a total of $ **604,774.84** .

**MODIFICATION.** For value received, you and I agree to modify the Prior Obligation as follows:

☒ INTEREST RATE MODIFICATION.

☒ INTEREST RATE.

Interest will be SCBT Prime plus 1% with a floor of 6% and a ceiling of 15%.

Maximum Interest Amount. Any amount assessed or collected as interest will be limited to the maximum lawful amount of interest allowed by state or federal law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid principal balance. Any remainder will be refunded to me.

☒ Post-Maturity/Default Interest Rate.

DEFAULT RATE: In lieu of any post-maturity interest rate set forth in the Note and in addition to and without limiting the remedies in this Note, if the Borrower is in default on this Note or any agreement securing this Note, the Lender may, after giving notice of default to the Borrower, change the interest rate on the Note to three (3) percent above the contract rate per year (the "Default Rate"). Post-judgment interest shall accrue at the Default Rate.

☐ Compounding. This Modification provides for the compounding of interest.

☒ PAYMENT MODIFICATION.

9 monthly interest only payments beginning 12/17/2008 with the final unpaid balance of principal and accrued interest due and payable on 09/17/2009

☐ DRAW PERIOD MODIFICATION.

☐ FEES AND CHARGES MODIFICATION.

**ADDITIONAL TERMS.**

Ther terms and provisions of the Commitment Letter dated 11/20/2008 are incorporated herein by reference. All other terms and conditions will remain the same.

**CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all terms of the Prior Obligation remain in effect.

**INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Modification.

**VT only** ☐ **NOTICE TO BORROWER: THIS IS A DEMAND NOTE AND SO MAY BE COLLECTED BY THE LENDER AT ANY TIME, A NEW NOTE MUTUALLY AGREED UPON AND SUBSEQUENTLY ISSUED MAY CARRY A HIGHER OR LOWER RATE OF INTEREST.**

☐ **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER/DEBTOR) AND US (LENDER/SECURED PARTY) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. BY SIGNING THIS MODIFICATION, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

**SIGNATURES.** By signing under seal, Borrower agrees to the terms contained in this Note. Borrower also acknowledges receipt of a copy of this Note.

**BORROWER:**

Powex Development, LLC

| | | | |
|---|---|---|---|
| Entity Name Bhite Properties, LLC | | (Seal) | Entity Name |
| Signature David E Payne, Mbr/Manager | Date | (Seal) | Signature David E Payne, Mbr/Manager    Date |
| | | (Seal) | Signature Gerlad D Payne, Mbr/Manager    Date |
| Signature Gerald D Payne, Mbr/Manager | Date | | |

**LENDER:**

SOUTHERN COMMUNITY BANK AND TRUST

| | | | |
|---|---|---|---|
| Entity Name | | (Seal) | Entity Name |
| Signature Dan Anderson, Commercial Banker  Date | | (Seal) | Signature    Date |

COMMERCIAL DEBT MODIFICATION AGREEMENT

NOT TO BE USED FOR LOANS SUBJECT TO CONSUMER LENDING LAWS

Experi © 1995, 2001 Bankers Systems, Inc., St. Cloud, MN  Form CCM14-DMOD 7/11/2004 .    (page 1 of 1)
(Veb)-0555 (Ross)

VMP Mortgage Solutions, Inc. (800)521-7291

| BORROWER NAME AND ADDRESS | LENDER NAME AND ADDRESS | LOAN DESCRIPTION |
|---|---|---|
| Power Development, LLC<br>One Oak Plaza, Suite 105<br>Asheville, NC 28805 | SOUTHERN COMMUNITY BANK AND<br>TRUST<br>PO BOX 26134<br>WINSTON-SALEM, NC 27114 | Number 2710006026<br><br>Amount $599,434.43<br><br>Date 09/25/2009 |

☐ Refer to the attached Signature Addendum, incorporated herein, for additional Borrowers and their signatures.

## COMMERCIAL DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is 09/25/2009.

**DEFINITIONS.** As used in this Modification, the terms have the following meanings:

**Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in this Modification or Prior Obligation.

**Prior Obligation.** "Prior Obligation" refers to my previous agreement governing my promise to pay you money, including any loan agreement, note, or document that evidences any indebtedness, and any extensions, renewals, modifications, and substitutions.

**BACKGROUND.** You and I have entered into a Prior Obligation which is evidenced by **Promissory Note & Deed of Trust**
dated **10/11/2007**   ☒ in the original principal amount of / ☐ with a maximum possible principal amount of $**600,000.00**   ,
☐ payable on demand. / ☐ payable on demand but if no demand is made, by the maturity date of _____ . / ☒ with a maturity
date of **08/17/2009**   .
As of the date of this Modification, the ☒ amount remaining due is / ☐ current amount outstanding on the Prior Obligation is $**599,434.43**
principal (Principal) plus $**5,845.13**   accrued interest, for a total of $**605,279.56**   .

**MODIFICATION.** For value received, you and I agree to modify the Prior Obligation as follows:

☐ **INTEREST RATE MODIFICATION.**

  ☐ **INTEREST RATE.**

    **Maximum Interest Amount.** Any amount assessed or collected as interest will be limited to the maximum lawful amount of interest allowed by state or federal law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid principal balance. Any remainder will be refunded to me.

    X  **Post-Maturity/Default Interest Rate.**
    **DEFAULT RATE:** In lieu of any post-maturity interest rate set forth in the Note and in addition to and without limiting the remedies in the Note, if the Borrower is in default on this Note or any agreement securing this Note, the Lender may, after giving notice of default to the Borrower, change the interest rate on the Note to three (3) percent above the contract rate per year (the "Default Rate"). Post-judgment interest shall accrue at the Default Rate.

  ☐ **Compounding.** This Modification provides for the compounding of interest.

☒ **PAYMENT MODIFICATION.**
  **Interest will be due monthly beginning 10/25/2009 with the final unpaid balance of principal and interest due on 11/25/2009.**

☐ **DRAW PERIOD MODIFICATION.**

☒ **FEES AND CHARGES MODIFICATION.**
  **Loan Modification Fee $250**

**ADDITIONAL TERMS.**
**Terms and provisions of commitment letter dated September 1, 2009 are incorporated herein by reference.  2 month renewal to allow time for borrower to provide financials.**

**CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all terms of the Prior Obligation remain in effect.

**INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Modification.

**VT only** ☐ **NOTICE TO BORROWER: THIS IS A DEMAND NOTE AND SO MAY BE COLLECTED BY THE LENDER AT ANY TIME. A NEW NOTE MUTUALLY AGREED UPON AND SUBSEQUENTLY ISSUED MAY CARRY A HIGHER OR LOWER RATE OF INTEREST.**

☐ **ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER/DEBTOR) AND US (LENDER/SECURED PARTY) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT. BY SIGNING THIS MODIFICATION, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

**SIGNATURES.** By signing under seal, Borrower agrees to the terms contained in this Note. Borrower also acknowledges receipt of a copy of this Note.

**BORROWER:**

Power Development, LLC
Entity Name

_____ (Seal)          Entity Name
Signature David R Payne          Date

_____ (Seal)          _____ (Seal)
Signature Gerald D Payne, Member/Manager   Date          Signature          Date

**LENDER:**

SOUTHERN COMMUNITY BANK AND TRUST
Entity Name

_____ (Seal)          _____ (Seal)
Signature Dan Anderson, Commercial Banker   Date          Signature          Date

COMMERCIAL DEBT MODIFICATION AGREEMENT          NOT TO BE USED FOR LOANS SUBJECT TO CONSUMER LENDING LAWS
Exp

© 1996, 2001 Bankers Systems, Inc., St. Cloud, MN  Form COMM-OMOD 7/1/2004   (page 1 of 1)
-C505 (0505)          VMP Mortgage Solutions, Inc. (800)521-7291

**COMMERCIAL PROMISSORY NOTE**

Southern Community Bank and Trust
465 Shepherd Street
Winston Salem, North Carolina 27103
(336)768-8500

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | LOAN TERM | MATURITY DATE |
|---|---|---|---|---|
| 2710006026 | December 24, 2009 | $599,434.43 | 4 months | April 22, 2010 |

LOAN PURPOSE: RENEWAL OF LOAN NUMBER 2710006026; Originally dated 10/11/07

**BORROWER INFORMATION**

Power Development, LLC
373 Biltmore Avenue
Asheville, NC 28803

---

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note".

**LENDER.** "Lender" means Southern Community Bank and Trust whose address is 465 Shepherd Street, Winston Salem, North Carolina 27103 , its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of Five Hundred Ninety-nine Thousand Four Hundred Thirty-four and 43/100 Dollars ($599,434.43) and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: 1 payment of interest only on January 22, 2010. This will be followed by 2 consecutive payments of interest only beginning on February 22, 2010 and continuing on the same day of each month thereafter. One final balloon payment shall be due on the Maturity Date in an amount equal to the then unpaid principal and accrued and unpaid interest. All payments received by the Lender from the Borrower for application to the Loan may be applied to the Borrower's obligations under the Loan in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The interest rate on this Note will be fixed at 4.250% per annum.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. Interest on this Note is calculated on a 365/360 day basis. The unpaid balance of this loan after Maturity, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to the same fixed or variable rate basis in effect before maturity.

**LATE PAYMENT CHARGE.** If any required payment is more than 15 days late, then at Lender's option, Lender will assess a late payment charge of 4% of the amount of the regularly scheduled payment then past due.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- Security Instruments(Mortgage/Deed of Trust/Security Deed) - 188 Coxe Ave. Bk: 4474 Pg: 1776-1788 Asheville NC 28801 in the amount of $690,000.00, dated October 11, 2007.

**GUARANTY.** In support of this transaction, a Guaranty dated December 24, 2009 has been executed by David R Payne; a Guaranty dated December 24, 2009 has been executed by Gerald Payne; and a Guaranty dated December 24, 2009 has been executed by Shire Properties, LLC.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or against Borrower of such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note to be immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by

Borrower under the terms of this Note or any other agreement, security agreement executed in connection with this Note (individually, a "Loan Document" and collectively, the "Loan Documents"); (c) any default by Borrower under the terms of any other note, loan agreement, security agreement, mortgage or other document in favor of Lender; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Loan Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any agreement or instrument with or in favor of Lender entered into or delivered in connection with the Loan terminates, attempts to terminate or defaults under any such agreement or instrument; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**RELATED DOCUMENTS.** If this Note is secured by a security agreement, mortgage, deed of trust, trust deed, security deed or loan agreement of even or previous date, it is subject to all the terms thereof.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of North Carolina except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**ADDITIONAL PROVISIONS. DEFAULT RATE:** In lieu of any post-maturity interest rate set forth in the Note and in addition to and without limiting the remedies in the Note, if the Borrower is in default on this Note or any agreement securing this Note, the lender may after giving notice of default to the Borrower, change the interest rate of the Note to three (3) percent above the contract per year (the "Default Rate"). Post-judgment interest shall accrue at the Default Rate.

**Modification Fee: $350.00; Interest due through 12/23/09 - $9809.27**

**WAIVER OF JURY TRIAL.** All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the related transactions.

By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.

Power Development, LLC

By: David R Payne                  Date: 12-30-09
Its: Managing Member

By: Gerald Payne                   Date: 12-30-09
Its: Managing Member

© 2004-2009 Compliance Systems, Inc. 059C-D128 - 2009.02.245
Commercial Promissory Note - DL4006

www.compliancesystems.com

Workflow No. 2403564

Doc ID: 020429750013 Type: CRP
Recorded: 10/11/2007 at 03:19:28 PM
Fee Amt: $50.00 Page 1 of 13
Workflow# 2403564
Buncombe County, NC
Otto W. DeBruhl Register of Deeds

BK 4474 PG 1776-1788

# REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

This instrument was prepared by (name, address):

~~Dan Anderson~~    PETER U. KANIPE
DAVID R. PAYNE, P.A.

When recorded return to (name, address):

~~SOUTHERN COMMUNITY BANK AND TRUST~~    PETER U. KANIPE
~~PO BOX 26194~~    DAVID R. PAYNE, P.A. – BOX #33
~~WINSTON SALEM, NC 27114~~

1. **DATE AND PARTIES.** The date of this Deed of Trust is <u>Oct 11, 2007</u>                      and the
   parties and their addresses are as follows:
   GRANTOR:
      DAKAR, INC., a North Carolina corporation; and

   BORROWER:
      POWER DEVELOPMENT, LLC, a North Carolina limited liability company,

   ☐ Refer to the Addendum which is attached and incorporated herein for additional Grantors.
   TRUSTEE:

   **SCBT, INC.**
   **4605 COUNTRY CLUB ROAD**
   **WINSTON SALEM, NC 27104**

   LENDER:

   SOUTHERN COMMUNITY BANK AND TRUST
   PO BOX 26134 WINSTON SALEM, NC 27114

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is
   acknowledged, and to secure the Secured Debt (hereafter defined), Grantor irrevocably grants, conveys

**NORTH CAROLINA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT**
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
Exporer © 1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-NC 10/07/2005
VMP-C595( NC) (0510)                                    VMP Mortgage Solutions, Inc.

(page 1 of 11)

**EXHIBIT B**

 

and sells to Trustee, in trust for the benefit of the Lender, with power of sale, the following described property:

**SEE ATTACHED "EXHIBIT A" FOR LEGAL DESCRIPTION INCORPORATED HEREIN BY REFERENCE**

The property is located in _____**Buncombe**_____ at **188 Coxe Avenue, 42**
                                       (County)

**and 44 Collier**           , _____**Asheville**_____ ,
        (Address)                                          (City)

North Carolina ___**28801**___
             (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** This Deed of Trust is given to secure all present and future obligations of Borrower to Lender. The period in which future obligations may be incurred and secured by this Deed of Trust is the period between the date hereof and that date which is the earlier of (i) the stated maturity date of the Note or (ii) fifteen (15) years from the date hereof. The amount of present obligations secured by this Deed of Trust is $600000.00, and the maximum principal amount, including present and future obligations, which may be secured by this Deed of Trust at any one time is $600,000.00. Any additional amounts advanced by Lender pursuant to the provisions of this Deed of Trust shall be deemed necessary expenditures for the protection of the security. Borrower need not sign any instrument or notation evidencing or stipulating that future advances or obligations are secured by this Deed of Trust.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount; note date, interest rate, maturity date):*

   **Promissory Note of even date executed in favor of the Lender by Power Development, LLC**

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed within fifteen years after the date of this Deed of Trust whether or not this Deed of Trust is specifically referred to in the evidence of debt. This Deed of Trust is intended to comply with the provisions of Article 7, Chapter 45 NCGS.
   C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Deed of Trust, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Grantor's performance under the terms of any instrument evidencing a debt by Grantor to Lender and any Deed of Trust securing, guarantying, or otherwise relating to the debt.

If more than one person signs this Deed of Trust as Grantor, each Grantor agrees that this Deed of Trust will secure all future advances and future obligations described above that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. This Deed of Trust will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure about this Deed of Trust or if Lender fails to give any required notice of the right of rescission.

Express ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-REBI-NC 10/07/2006
VMP-C595(NC) (0510)

5. **PAYMENTS.** Grantor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Deed of Trust.

6. **WARRANTY OF TITLE.** Grantor covenants that Grantor is lawfully seized of the estate conveyed by this Deed of Trust and has the right to irrevocably grant, convey and sell to Trustee, in trust, with power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Deed of Trust. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Grantor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, or security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Deed of Trust, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Grantor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Deed of Trust is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Grantor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Deed of Trust.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
    A. Grantor is an entity which is duly organized and validly existing in the Grantor's state of incorporation (or organization). Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
    B. The execution, delivery and performance of this Deed of Trust by Grantor and the obligation evidenced by the Evidence of Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than disclosed in writing Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will give Lender prompt notice of any loss or damage to the Property. Grantor will keep the Property free of noxious weeds and grasses.

Express ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/07/2005
VMP®-C595(NC) (0510)



Grantor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Grantor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Grantor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Deed of Trust. Grantor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Grantor fails to perform any of Grantor's duties under this Deed of Trust, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Deed of Trust, Lender may, without notice, perform the duties or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Deed of Trust. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, bargains and conveys to Lender as additional security all the right, title and interest in the following (Property).
   A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases);
   B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver

any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Grantor will be in default if any of the following occur:
    A. Any party obligated on the Secured Debt fails to make payment when due;
    B. A breach of any term or covenant in this Deed of Trust, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any person or entity obligated on the Secured Debt;
    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
    F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
    G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Deed of Trust in a manner provided by law if this Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Deed of Trust and any related documents including without limitation, the power to sell the Property.

Experè® ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/07/2005
VMP®-C595(NC) (0510)



(page 5 of 11)



If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash, after having first given such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may be then required by law, and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, including the Trustee's commission, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. The Trustee's commission shall be five percent of the gross proceeds of the sale for a completed foreclosure. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Deed of Trust. Grantor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Grantor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Deed of Trust, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Deed of Trust and Grantor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Grantor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:
   A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
   B. Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
   C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

Experts ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/07/2005
VMP -C595( NC) (0610)
®




D. Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Deed of Trust and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Deed of Trust without prejudice to any of Lender's rights under this Deed of Trust.

L. Notwithstanding any of the language contained in this Deed of Trust to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Deed of Trust regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Grantor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding three sentences can change during the term of the Secured Debt. The insurance



8

carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Deed of Trust.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless Lender and Grantor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Grantor. If Grantor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Grantor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Grantor warrants that all financial statements and information Grantor provides to Lender are, or will be, accurate, correct, and complete. Grantor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Deed of Trust and Lender's lien status on the Property. If Grantor fails to do so, Lender may sign, deliver, and file such documents or certificates in Grantor's name and Grantor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Deed of Trust are joint and individual. If Grantor signs this Deed of Trust but does not sign the Evidence of Debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. Grantor agrees that Lender and any party to this Deed of Trust may extend, modify or make any change in the terms of this Deed of Trust or the Evidence of Debt without Grantor's consent. Such a change will not release Grantor from the terms of this Deed of Trust. The duties and benefits of this Deed of Trust shall bind and benefit the successors and assigns of Grantor and Lender.

ExperⓇ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-NC 10/07/2005
VMP-C695(NC) (0510)



9

If this Deed of Trust secures a guaranty between Lender and Grantor and does not directly secure the obligation which is guarantied, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Deed of Trust is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Deed of Trust is complete and fully integrated. This Deed of Trust may not be amended or modified by oral agreement. Any section or clause in this Deed of Trust, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Deed of Trust cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Deed of Trust. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms of this Deed of Trust. Time is of the essence in this Deed of Trust.

26. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Deed of Trust, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Deed of Trust:
    ☐ **Construction Loan.** This Deed of Trust secures an obligation incurred for the construction of an improvement on the Property.
    ☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.
    ☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").
    ☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.
    ☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Deed of Trust also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Deed of Trust is sufficient as a financing statement.

Express ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN   Form AGCO:RESI-NC   10/07/2005
VMP-C595( NC) (0510)

/0

29. **OTHER TERMS.** If checked, the following are applicable to this Deed of Trust:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Deed of Trust will remain in effect until released.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below under Seal, Grantor agrees to the terms and covenants contained in this Deed of Trust and in any attachments that Grantor has signed. Grantor also acknowledges receipt of a copy of this Deed of Trust on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated _____

Entity Name: DAKAR, INC. Grantor _____

By: _____ (Seal)
(Signature) **David R Payne,** (Date)
**President/Secretary** 10/11/2007

_____ (Seal)
(Signature)                    (Date)

Entity Name: POWER DEVELOPMENT, LLC.
Borrower
By: Shire Property Co., LLC, Member/Manager
By: _____ (Seal)
(Signature) **David R. Payne,** (Date)
**Member/Manager** 10/11/2007

_____ (Seal)
(Signature)                    (Date)

*11*

**SEAL-STAMP**
⬇

CAMERON R. HIGDON
Notary Public, North Carolina
County of Haywood
My Commission Expires 02/25/2011

**STATE OF NORTH CAROLINA, COUNTY OF BUNCOMBE**

I, a Notary Public in and for the County of Haywood and State of North Carolina, do hereby certify that **DAVID R. PAYNE** personally appeared before me this day and acknowledged that he is **President/Secretary of DAKAR, INC., a North Carolina corporation, Grantor, Borrower**, and acknowledged the due execution of the foregoing in the capacity indicated and on behalf of the corporation.

WITNESS my hand and official seal-stamp this the 11th day of October, 2007.

Cameron R. Higdon
Cameron R. Higdon, Notary Public
My commission expires: 02/25/2011

**SEAL-STAMP**
⬇

CAMERON R. HIGDON
Notary Public, North Carolina
County of Haywood
My Commission Expires 02/25/2011

**STATE OF NORTH CAROLINA, COUNTY OF BUNCOMBE**

I, a Notary Public in and for the County of Haywood and State of North Carolina, do hereby certify that **DAVID R. PAYNE** personally appeared before me this day and acknowledged that he is **Member/Manager of Shire Properties, LLC, a North Carolina limited liability company, which is Member/Manager of POWER DEVELOPMENT, LLC, a North Carolina limited liability company, Borrower**, and acknowledged the due execution of the foregoing in the capacity indicated and on behalf of the company.

WITNESS my hand and official seal-stamp this the 11th day of October, 2007.

Cameron R. Higdon
Cameron R. Higdon, Notary Public
My commission expires: 02/25/2011

*/2*

## EXHIBIT A TO DEED OF TRUST
## FROM DAKAR, INC., GRANTOR, AND POWER DEVELOPMENT, LLC, BORROWER,
## TO SCBT, INC., TRUSTEE FOR SOUTHERN COMMUNITY BANK AND TRUST,
## DATED OCTOBER 11, 2007

PARCEL I (188 Coxe Avenue [PIN 9648.06-37-4711]):

BEING all of Lots 42 and 43 (except so much of the same as has been appropriated for the widening of Collier Avenue), and a small part of Lot 41 of Block D as shown on a plat which is recorded in Buncombe County Register's Office in Plat Book 7, at Page 26, and particularly described as follows: BEGINNING at a stake in the Eastern margin of Coxe Avenue at the Southwest corner of Lot 44 of said Block and Plat; and runs thence with the dividing line between said Lots 43 and 44, the following courses and distances: South 88 deg. 44 min. East 58.71 feet and South 87 deg. 34 min. 30 sec. East 43.95 feet to a stake in the Western margin of Collier Avenue; and runs thence with said margin of said Avenue, South 3 deg. 48 min. East 51.10 feet to a stake; thence North 87 deg. 34 min. 30 sec. West 43.95 feet to a stake; thence North 88 deg. 44 min. West 58.71 feet to a stake in the Eastern margin of Coxe Avenue; and runs thence with said margin of said Avenue, North 3 deg. 48 min. West 51.10 feet to the place of Beginning. Being the same property described as Second Tract in a deed dated September 26, 1960, from H. Edwin Allen and wife, to W. T. Duckworth, Jr., Edgar J. Duckworth, J. D. Ray, and H. W. Brooks, as Trustees of the Estate and under the Will of O. D. Revell, as recorded in the Office of the Register of Deeds for Buncombe County, North Carolina, in Deed book 835, Page 167.

THIS property is conveyed subject to specific restrictions on the southern wall of the building located on Lots 42 and 43, more specifically set out in Deed Book 734, Page 143, building restrictions, easements and rights of way of record, and taxes for the year, and zoning ordinances.

PARCEL II (42 Collier Avenue [PIN 9648.06-37-5766]):

TRACT 1: BEGINNING on a pin, the Western margin of Collier Avenue, said pin being the Southwestern corner of Lot 15 of Block C as shown on a Plat recorded in Plat Book 12, Page 69 in the Office of the Register of Deed for Buncombe County, North Carolina, and runs thence with the dividing line between Lots 15 and 17, South 88 deg. 05 min. East 100.42 feet to an iron pin; thence North 1 deg. 55 min. East 38.81 feet to an iron pin; thence North 88 deg. 05 min. West 104.31 feet to an iron pin in the Western margin of Collier Avenue; thence with said margin of said Avenue, South 3 deg. 48 min. East 39 feet to the point and place of BEGINNING. Being all of Lot 15 as shown on above described plat and a Southern portion of Lot 13 of said plat.

TRACT 2: All the right, title, and interest of the Grantor in and to that tract of land described as follows: BEGINNING at an iron pin in the Western margin of Millard Avenue, said iron pin located in the Southeastern corner of the property of the Trustees of the O. D. Revel Estate described in Deed Book 835, Page 137 in the Office of the Register of Deeds for Buncombe County, N.C., and runs thence with the Southern line of said Revell Estate North 88 deg. 05 min. West 84.25 feet to an iron pin; thence South 1 deg. 55 min. West 12.9 feet to an



*13*

iron pin; thence South 88 deg. 05 min. East about 70 feet to the said margin of said Avenue; thence with said margin of said Avenue, North 43 deg. 25 min. East 17.29 feet to an iron pin, the place of BEGINNING.

TRACT 3:    All right, title, and interest of the Grantor in and to that strip of land 20 inches wide and 104 feet long on the North side of Tract 1 above, and being the same property described and conveyed by a deed dated October 14, 1958, from Edwin Allen and wife, Elizabeth G. Allen, to W. C. Vaughan, which deed is recorded in the Buncombe County Public Registry in Deed Book 806, Page 78, reference to which is hereby expressly made for a more particular description.

PARCEL III (44 Collier Avenue [PIN 9648.06-375668]):

BEGINNING at an iron pin in the East margin of the right of way of Collier Avenue, said iron pin lying North 88 deg. 3 min. 30 sec. West 0.14 feet from the Northwest corner of a concrete block building, also lying in the Southwest corner of lands described in a deed to JRW Investments recorded in Deed Book 1179, Page 502, and also lying the following two courses and distances from a one half inch hex pin in the North margin of an alley, Southernmost corner of Lot 11-1/2 of Block C, Plat Book 12, Page 69: North 88 deg. 5 min. West 276.56 feet to a 1.25 inch pipe; South 3 deg. East, passing a one inch iron pin at 20.09 feet, a total of 107.62 feet; then from the BEGINNING THUS ESTABLISHED, with the South line of the said JRW Investments tract three calls, South 88 deg. 3 min. 30 sec. East 104.34 feet to a point; North 1 deg. 57 min. 30 sec. East 2.55 feet to a point (said point lying North 88 deg. 5 min. West 0.33 feet from an offset iron pin); South 88 deg. 5 min. east 69.26 feet to a point in the Northeast margin of the right of way of Millard Avenue, said point lying South 88 deg. 5 min. East 5 feet from an iron pin; then with the said right of way margin, on a line parallel to the South wall of the above referenced concrete block building, South 43 deg. 25 min. West 226.88 feet to a railroad spike; then with the margin of the right of way at the Northern corner of the intersection of Collier Avenue and Millard Avenue, on a curve to the Northwest having a radius 4.5 feet; distance 8.1, chord North 85 deg. 1 min. West 7.05 feet, to a chiseled "X" in the sidewalk in the East margin of the right of way of Collier Avenue, then with the said right of way margin, North 3 deg. 38 min. West 167.83 feet to the place of BEGINNING.

BEING as described in a survey for Morgan Brothers School Supplies, Inc., by Robert K. Robbins, R.L.S., dated January 17, 1991, File No. 91-188-A, said survey being appended as an Exhibit to a deed to Morgan Brothers School Supplies, Inc., recorded in Deed Book 1638, Page 544.

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| POWER DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 10-10684 |
| Debtor. | ) | |
| | ) | |

---

## NOTICE OF OPPORTUNITY FOR HEARING

---

Southern Community Bank and Trust ("SCBT") has filed papers with the court seeking relief from the automatic stay to authorize SCBT to provide, or direct that Debtor be provided, required notices in an anticipated foreclosure proceeding related to certain real property owned by Dakar, Inc., a non-debtor entity (the "Motion").

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, then on or before **15 days from the date of this Notice**, unless otherwise ordered, you or your attorney must file with the court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing at:

U.S. Bankruptcy Court
100 Otis Street
Asheville, NC  28801

If you mail your request/response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

You must also mail a copy to:

U.S. Bankruptcy Administrator
402 W. Trade Street
Suite 200
Charlotte, NC 28202-1669

Power Development, LLC
373 Biltmore Avenue
Asheville, NC 28801

D. Rodney Kight, Jr.
Kight Law Office
9 SW Pack Square, Suite 200
Asheville, NC 28801

Erin F. Dunnuck
One Rankin Avenue, Third Floor
Asheville, North Carolina 28801

Michael G. Gallerizzo
Gebhardt & Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202-3281

Kenneth M. Greene
Carruthers & Roth, P.A.
Post Office Box 540
235 N. Edgeworth Street
Greensboro, North Carolina 27401

Jeanette M. Stark
Blanco Tackabery & Matamoros, PA
P. O. Drawer 25008
Winston-Salem, NC  27114

and all other parties in interest.

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the Motion on **August 18, 2010** at U.S. Bankruptcy Court, 100 Otis Street, Asheville, North Carolina at **9:30 a.m.**

If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an Order granting that relief.

Date: July 28, 2010.

s/Jeanette M. Stark.
Jeanette M. Stark, NCSB # 31812
*Attorney for Southern Community Bank and Trust*

**OF COUNSEL:**
BLANCO TACKABERY
COMBS & MATAMOROS, P.A.
P.O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Fax: (336) 293-9030
jstark@blancolaw.com

BTM:439912v1

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| POWER DEVELOPMENT, LLC, | ) | |
| | ) | Case No. 10-10684 |
| Debtor. | ) | |
| | ) | |

---

## CERTIFICATE OF SERVICE

---

The undersigned does hereby certify that she has this date served a copy of the **MOTION FOR RELIEF FROM STAY and NOTICE OF OPPORTUNITY FOR HEARING,** by placing said copies in a first-class mail envelope, postage prepaid, and depositing same with the United States Postal Service (*unless otherwise noted*), addressed to the parties on the attached list.

This the 28th day of July, 2010.

                              s/Jeanette M. Stark.
                              Jeanette M. Stark, NCSB # 31812
                              *Attorney for Southern Community Bank and Trust*

**OF COUNSEL:**

BLANCO TACKABERY & MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
Email: jstark@blancolaw.com

U.S. Bankruptcy Administrator
402 W. Trade Street
Suite 200
Charlotte, NC 28202-1669

Power Development, LLC
373 Biltmore Avenue
Asheville, NC 28801

D. Rodney Kight, Jr.
Kight Law Office
9 SW Pack Square, Suite 200
Asheville, NC 28801

Erin F. Dunnuck
One Rankin Avenue, Third Floor
Asheville, North Carolina 28801

Michael G. Gallerizzo
Gebhardt & Smith, LLP
One South Street, Suite 2200
Baltimore, Maryland 21202-3281

Kenneth M. Greene
Carruthers & Roth, P.A.
Post Office Box 540
235 N. Edgeworth Street
Greensboro, North Carolina 27401