FILED & JUDGMENT ENTERED
David E. Weich

Sep 29 2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_George R. Hodges_
George R. Hodges
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In Re: ) | Case No. 10-10684 |
| ) | Chapter 11 |
| POWER DEVELOPMENT, LLC, ) | |
| ) | |
| Debtor. ) | |
| ) | |

## *AMENDED* ORDER DISMISSING CASE

This matter is before the court on the *Motion to Dismiss* and *Amended Motion to Dismiss* filed by the Office of the United States Bankruptcy Administrator ("Bankruptcy Administrator"). Alexandria P. Kenny appeared for the Bankruptcy Administrator, D. Rodney Kight, Jr. ("Kight") appeared for the Debtor, Kenneth M. Greene and Michael G. Gallerizzo appeared for Applied Bank, and Mark A. Pinkston appeared for HomeTrust Bank and Macon Bank. The court has concluded that dismissal of this Chapter 11 case is merited because of the debtor's wholesale disregard for its duties as a debtor-in-possession and "trustee;" its violation of the established Operating Order in this case; and the debtor's failure to correct its defaults after numerous requests by the Bankruptcy Administrator, several opportunities to rectify defaults, and warnings of the consequences of failure to do so.  The debtor having failed to take advantage of opportunities to comply, and other efforts by the Bankruptcy Administrator to obtain compliances having been fruitless over a period of several months, the court is left with no alternative but to dismiss the case and bar refiling.

The court entered its Order Dismissing Case on September 28, 2010. In its haste to get the Order on file, the court omitted a section that it had

intended to include. This Amended Order Dismissing Case corrects that omission (now in paragraphs 17 and 18) and corrects other typographical omissions in paragraphs 8 and 20.

1. This is a Chapter 11 proceeding in which a voluntary petition was filed on June 11, 2010. The debtor is a developer of real estate and owns several properties. This bankruptcy case was filed during the ten-day upset bid period following the foreclosure sale of one of the debtor's properties, a condominium development.

2. On June 14, 2010, an Operating Order was entered in this case. That Order provided, in part, that the debtor file monthly status reports, pay quarterly fees and provide the Bankruptcy Administrator proof of insurance coverage on all property of the debtor and property of the estate within ten days of the date of filing.

3. On June 23, 2010, the Bankruptcy Administrator conducted a site visit of the debtor's properties. At the site visit, the Bankruptcy Administrator advised the debtor to provide proof of insurance for all of the debtor's properties and requested rent rolls from the debtor. In an e-mail to Kight dated June 27, 2010, the Bankruptcy Administrator again requested proof of insurance and a copy of the rent rolls.

4. At the continued 11 U.S.C. § 341 Meeting of Creditors ("First Meeting of Creditors") held July 28, 2010, the Bankruptcy Administrator requested the debtor provide proof of insurance and amend its schedules as soon as possible in addition to requesting a copy of the rent rolls.

5. The debtor did not provide the Bankruptcy Administrator with proof of any insurance until August 23, 2010 and the information provided was incomplete.

6. On August 26, 2010, a telephone conference was held in which Judge George R. Hodges, the Bankruptcy Administrator and Kight participated. Kight was advised that the debtor was required to obtain insurance for all of its properties, including general liability insurance, by 12:00 p.m. on August 27, 2010. The debtor was also required to amend its schedules within ten (10) days.

7. The debtor provided proof of insurance for all of its properties but did not provide proof of general liability insurance.

    a. Three of the properties listed on Schedule A were insured in the name of Dakar, Inc. ("Dakar"), a wholly owned subsidiary of the debtor. The properties insured in the name of Dakar, Inc. are:

2

        i.        42 Collier Avenue, Asheville, North Carolina

        ii.       44 Collier Avenue, Asheville, North Carolina

        iii.      188 Cox Avenue, Asheville, North Carolina

    b.    The Bankruptcy Administrator e-mailed Kight on September 2, 2010 that the insurance policies in the name of Dakar needed to be changed to list the debtor as the insured if the debtor owned the properties. If the properties were owned by Dakar, the debtor needed to amend its schedules to list that the properties were owned by Dakar. The debtor was also advised to amend its schedules to list Dakar as an asset of the debtor.

        i.       Kight was advised to amend Schedule A to specifically list which condominium units the debtor owns in "The Residences at Biltmore," which is located at 700 Biltmore Avenue, Asheville, North Carolina according to Schedule A.

        ii.      Kight was also advised to submit proof of general liability insurance.

8.    On August 30, 2010, Kight e-mailed the Bankruptcy Administrator concerning general liability insurance and stated that the quotes for it were in the $8,000 to $9,000.00 range, and that the debtor was not in a position to make a payment of that amount. The e-mail further said that one of the debtor's principals would loan the debtor the money for general liability insurance and that Kight would file a motion to approve the loan nunc pro tunc. No such motion was ever filed.

9.    On September 17, 2010 -- just days before the scheduled hearing on the Motion to Dismiss -- the debtor filed amended schedules. However, the amendments did not cure the following deficiencies:

    a.    Schedule A did not list what condominium units the Debtor owned in "The Residences at Biltmore," nor did it indicate if any of the property listed on Schedule A was owned by Dakar.

    b.    Schedule B was amended to delete a business checking account (account number 1183) with HomeTrust Bank that was originally scheduled as having a balance of $4,909.47.

        i.       On August 31, 2010, Applied Bank conducted a 2004 exam of the debtor and David R. Payne, one of the debtor's principals, testified that the balance of the account with HomeTrust Bank was a negative $4,909.47 as of the filing date and stated that the debtor would amend its schedules to reflect the correct balance.

3

    ii. The debtor did not list the negative balance in the account with HomeTrust Bank as a liability.

  c. The debtor did not amend Schedule B to list Dakar as an asset although the debtor did amend question 18 of the Statement of Financial Affairs to list Dakar.

  d. The debtor did not amend Schedule H to list the creditors for which it has co-debtors but merely stated "various creditors" despite being advised at the First Meeting of Creditors to amend Schedule H to list the creditors.

10. Also on September 17, 2010, the debtor filed Monthly Status Reports for the months of June, 2010, July, 2010 and August, 2010 and filed a quarterly fee statement for the second quarter of 2010.

  a. The June, 2010 monthly status report was due July 31, 2010.

  b. The July, 2010 monthly status report was due August 31, 2010.

  c. The quarterly fee statement for the second quarter of 2010 included a copy of a money order payable to the Clerk of the U.S. Bankruptcy Court for payment of quarterly fees with a note that it would be delivered on September 20, 2010. These fees were due on July 31, 2010.

11. On September 20, 2010, the Bankruptcy Administrator amended the Motion to Dismiss after learning that the debtor was administratively dissolved by the State of North Carolina Department of the Secretary of State ("Secretary of State").

  a. On September 21, 2010, the debtor filed a response to the Amended Motion to Dismiss.

  b. Attached to the debtor's response was a packet of information sent via Federal Express to the Secretary of State on September 20, 2010 that purportedly included documents necessary to reinstate the debtor following its administrative dissolution.

12. The debtor has failed to provide the rent rolls requested by the Bankruptcy Administrator and has failed to provide proof of general liability insurance.

13. The debtor has defaulted on its obligations pursuant to the Operating Order and has defaulted on its duties to creditors as debtor-in-possession:

4

  a. The debtor has failed to file required schedules and other information that is basic to the Chapter 11 proceeding. Over 90 days after filing, the debtor has not provided accurate information (including certain assets of the debtor) that should have been included in the Petition.

  b. The debtor has failed to perform such basic duties as undertaking to protect the real property assets of the debtor from loss by casualty or liability. After literally months of effort by the Bankruptcy Administrator to get the debtor to provide insurance information, the information provided by the debtor is incomplete and unreliable. Moreover, the debtor is unwilling or unable to provide any liability insurance protection.

  c. The debtor has routinely and consistently failed to perform required tasks on a timely basis.

14. The debtor's belated effort to appear compliant came after months of requests, and just days before the scheduled hearing on the Bankruptcy Administrators Motion to Dismiss. Plus, that effort is incomplete and inadequate. The debtor's prolonged pattern of default and inadequate efforts gives the court no basis to believe that any improvement would be forthcoming in the future. Based on the debtor's actions (and inaction) to date, the court can only predict that, if the case were not dismissed, the debtor would continue its defaults and continue its frustration of creditors, the Bankruptcy Administrator and the court. The debtor has given the court no tangible evidence of any ability to reorganize its financial affairs.

15. The debtor has had sufficient time to comply with all requirements of the Code and Operating Order. The Bankruptcy Administrator has made numerous requests that have not been complied with and there is no indication that the debtor would change that pattern of behavior in the future. Even the Motion to Dismiss and the scheduled hearing on that did not prompt the debtor to fully comply with its obligations. The debtor appears to lack sufficient funds for a financial sanction to be effective. Consequently, dismissal appears to be the only alternative to continued frustration of creditors by this debtor.

16. Three of the debtor's largest secured creditors in this case, Applied Bank, HomeTrust Bank and Macon Bank, each joined in the Bankruptcy Administrator's Motion to Dismiss this case.

17. Dismissal of this Chapter 11 case is authorized on several bases:

  a. Section 105 of the Bankruptcy Code provides that the court has broad powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title…or to

5

prevent abuse of process." 11 U.S.C. § 105(a). Those powers include the authority to prevent an abuse of the bankruptcy process. <u>In re Volpert</u>, 110 F.3d 494, 500 (7th Cir.1997).

   b. The court has the inherent authority to control various aspects of a case pending before it. <u>See</u>, <u>United States v. Moussaoui</u>, 483 F.3d 220, 236-37. (4th Cir. 2007). Such inherent authority extends to dismissal. <u>See</u>, <u>Anderson v. Fdn. For Advancement, Education and Employment of American Indians</u>, 155 F.3d 500 (4th Cir. 1991).

   c. Section 1112 (b)(1) provides for dismissal of a Chapter 11 case for "cause" in the absence of "unusual circumstances" that establish that dismissal is not in the best interests of creditors and the debtor's estate. "Cause" includes gross mismanagement, failure to maintain insurance, unexcused failure to satisfy timely any filing or reporting requirement and failure timely to provide information reasonably requested by the Bankruptcy Administrator. 11 U.S.C. § 1112(b)(4)(B), (c), (F) and (H).

  18. This debtor's defaults outlined specifically above are pervasive and continuing. Its behavior and omissions are egregious and detrimental to creditors and to administration of the bankruptcy case. The debtor has been given multiple opportunities to comply but has failed to do so. Financial or other sanctions are not effective in the circumstances here. There are no unusual circumstances that would render dismissal against the best interests of creditors and of the estate. Though over three months into the case, the debtor has not met the basic requirements of serving as "trustee" debtor-in-possession and appears no closer to being able to effect a plan of reorganization than it was on the date it filed its petition. Under all of these circumstances, dismissal of this case is the appropriate remedy for this debtor's defaults.

  19. It appears that substantially all of the debtor's assets are encumbered to secured creditors who are under-secured. Therefore, dismissal, and not conversion to Chapter 7, is in the best interests of creditors and the debtor's estate.

  20. The debtor has demonstrated such a disregard for its obligations as debtor-in-possession that there is no basis to believe that it would behave any differently if given another chance. This case has proceeded long enough for the debtor to comply with its responsibilities and proceed to reorganize if it had the willingness and ability to do so. A subsequent bankruptcy filing would simply further delay and frustrate creditors. Consequently, the court has concluded that the debtor should be barred from re-filing another bankruptcy case for 180 days after entry of this dismissal Order.

Wherefore, based upon the foregoing and the entire record in this case it is hereby **ORDERED**:

1.Due to the debtor's failure to comply timely and adequately with the requirements of the Operating Order, Orders of this Court, the Bankruptcy Code, the requests of the Bankruptcy Administrator, and the Secretary of State, the debtor's case is hereby DISMISSED.

2.The debtor is barred from filing bankruptcy, under any Chapter, for a period of one hundred eight (180) days from the entry of this Order.

3.Pursuant to 11 U.S.C § 362(c) of the Bankruptcy Code, the automatic stay provided in section 362 of the Bankruptcy Code shall no longer remain in effect as to the debtor or any of its property.

4.This Order shall be effective upon its entry.

*This Order has been signed electronically.**United States Bankruptcy Court*
*The judge's signature and court's seal appear*
*at the top of the Order.*